# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STATE FARM FIRE AND
CASUALTY COMPANY,

       Plaintiff,

v.

JAMIE N. BELL,

       Defendant, Cross-Claimant/
       Third-Party Plaintiff,

and

C.M., a minor, by and through her
natural guardian and next friend,
BRANLYN FINNELL, DALLAS N.
HARTMAN, CHARLES C. CONNER, III,
JARED M. WILKINSON and THE
PANTRY, INC.,

       Defendants/Cross-Claim
       Defendants,

and

KENNETH M. KEEN,

       Third-Party Defendant.

Case No. 12-2456-DDC-KGG

## <u>MEMORANDUM AND ORDER</u>

State Farm Fire and Casualty Company brought suit against Dallas N. Hartman, Charles

C. Conner, III, Branlyn Finnell as natural guardian and next friend of minor C. M., Jamie N.

Bell, Jared M. Wilkinson, and The Pantry, Inc. seeking a declaratory judgment that it owed no

coverage arising out of an accident and no duty to defend Kenneth Keen, its insured.  State Farm

now has resolved its claims against all defendants.[1]  In her responsive pleading, however, Bell brought cross-claims against her co-defendants and a third-party action against Keen.  On June 5, 2013, Bell stipulated to the dismissal of the third-party defendant Keen and each of the other co-defendants except The Pantry Inc.  (Doc. 111.)  Therefore, cross-claim plaintiff Bell and cross-claim defendant The Pantry, Inc. are the only remaining parties in this action.  Hereafter, for simplicity, the Court will refer to cross-claim plaintiff Bell as "plaintiff" and cross-claim defendant The Pantry, Inc. as "defendant."

This lawsuit arises from a motor vehicle accident that occurred on September 18, 2011, in Gardner, Kansas.  C.M., a minor, who was not licensed and driving illegally, drove a Mercedes SUV over the curb and onto the sidewalk in front of a convenience store owned and operated by defendant.  The vehicle struck plaintiff, who was standing on the sidewalk, and pinned her against the building.  As a result, plaintiff sustained personal injuries including a crushed pelvis,

---

[1]      State Farm and Bell stipulated to dismissal of State Farm's claims against Bell. Stipulation of Dismissal (Doc. 111) filed June 5, 2013.

State Farm applied for and obtained entries of default against Hartman, Conner, Finnell as natural guardian and next friend of C. M., and Wilkinson.  *See* State Farm's Appl. for Clerk's Entry of Default as to Defs. Dallas N. Hartman, Charles C. Connor (sic), III, C. M., A Minor, and Jared M. Wilkinson (Doc. 16) filed August 28, 2012; Entry Of Default (Docs. 17, 18, 19, 20) filed August 28, 2012.  State Farm later sought default judgment against Hartman, Conner and Wilkinson, *see* Mots. for Default J. (Docs. 129, 130) filed August 13 and August 14, 2013, and sought summary judgment against C. M., *see* State Farm's Mot. for Summ. J. as to C. M., a Minor, and The Pantry, Inc. (Doc. 132) filed August 21, 2013.  Judge Vratil, who previously was assigned to this case, granted State Farm's Motions for Default Judgment against Hartman, Conner, and Wilkinson (Docs. 152, 153), and granted State Farm's Motion for Summary Judgment against C.M. (Doc. 155).

Finally, State Farm and The Pantry, Inc. stipulated to dismissal of State Farm's claims against The Pantry.  *See* Stipulation of Dismissal (Doc. 139) filed Sept. 11, 2013.

broken knees, and multiple cuts and bruises.  In this diversity action,[2] plaintiff brings a negligence claim under Kansas law against defendant.  Plaintiff alleges that defendant breached its duty of care by failing to keep plaintiff reasonably safe under the circumstances because defendant failed to install parking bollards[3] or wheel stops or take other precautions to protect the storefront or pedestrians standing on the sidewalk between the storefront and the head-in parking spaces.  Plaintiff further alleges that a dangerous condition existed on defendant's property because it lacked bollards or other barriers in the parking lot protecting the pedestrian walkway and storefront from vehicular damage.  Plaintiff contends that defendant had knowledge and notice of the dangerousness of the condition and that plaintiff's injuries were foreseeable.

This matter comes before the Court on plaintiff's Motion to Exclude or Limit the Testimony of Expert Richard D. Blomberg (Doc. 162), defendant's Motion to Exclude Expert Testimony (Doc. 166), and defendant's Motion for Summary Judgment (Doc. 164).  For the reasons explained below, the Court grants in part and denies in part plaintiff's Motion to Exclude or Limit the Testimony of Expert Richard D. Blomberg, grants in part and denies in part

---

[2]      The Court recognizes that defendant disputes that the Court has subject matter jurisdiction over plaintiff's claims.  *See* Def.'s Mot. to Dismiss Jamie Bell's Cross-Cls. and Third-Party Pet. (Doc. 41); *see also* Pretrial Order (Doc. 159).  Defendant contends that the Court does not have subject matter jurisdiction in this case because complete diversity did not exist between plaintiff and all of the cross-claim defendants, and defendant further asserts that the Court should have declined to exercise supplemental jurisdiction over plaintiff's claims against defendant.  *Id.*  On November 18, 2013, Judge Vratil overruled defendant's Motion to Dismiss for lack of subject matter jurisdiction and also found no compelling reason to decline to exercise supplemental jurisdiction.  (Doc. 154.)  Consequently, the Court has concluded that it has subject matter jurisdiction over this action.

[3]      A bollard is a vertical pipe or tube that is usually made of steel and installed in a sequence to provide a barrier between vehicles and a building or vehicles and a sidewalk.

defendant's Motion to Exclude Expert Testimony (Doc. 166), and denies defendant's Motion for Summary Judgment.

## I.      Motions to Exclude Expert Testimony

### A.  Legal Standard

The Court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). In performing this gatekeeping role, the Court has broad discretion when deciding whether to admit expert testimony. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1498 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992)). The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)      the testimony is based on sufficient facts or data;
> (c)      the testimony is the product of reliable principles and methods; and
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This Court must apply a two-part test to determine admissibility. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). First, the Court must determine "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702). Second, the Court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Id.*

(quoting *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)) (further citations omitted).

To qualify as an expert, the witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (internal quotation omitted).  To determine whether the expert's testimony is reliable, the Court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.  The Supreme Court set forth in *Daubert* a non-exhaustive list of four factors that trial courts may consider when determining the reliability of the proffered expert testimony under Fed. R. Evid. 702:  (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community.  *Id.* at 593–94.  The Supreme Court has emphasized, however, that these four factors are not a "definitive checklist or test" and that a court's gatekeeping inquiry into reliability must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150.  In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundation.  *Id.*

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy*, 707 F.3d at 1168 (citing *Nacchio*, 555 F.3d at 1241).  "[R]ejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702 advisory committee notes.  While *Daubert* requires the Court to act as a gatekeeper for the admission of expert testimony, "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

The Court has discretion to determine how to perform its gatekeeping function under *Daubert*. *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000). "The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated." *Id.* (citations omitted). In this case, the parties do not request a hearing. The Court has carefully reviewed the exhibits filed with the motions and believes this review is sufficient to render a decision without conducting a hearing.

### B.  Plaintiff's Motion to Exclude or Limit the Testimony of Expert Richard Blomberg (Doc. 162)

Plaintiff seeks to exclude or limit the expert opinion testimony of Richard D. Blomberg, an engineer designated by defendant as an expert witness. As pertinent here, one may summarize Blomberg's opinions as follows.

Blomberg is President of Dunlap and Associates, Inc., a research firm. In this position, he has directed or been involved in the application of human engineering and systems analytic principles to highway safety, product safety, aircraft design and certification, and the design and evaluation of human-computer interfaces. His work includes the study of pedestrian safety problems and the development of countermeasures to them. Blomberg is a member of the Transportation Research Board ("TRB"), an Emeritus (Lifetime) member of TRB's Pedestrian Committee, a former member of its Committee on Alcohol, Other Drugs, and Transportation, and a member of the Human Factors and Ergonomics Society, Society of Automotive Engineers, the Institute for Operations Research and the Management Sciences, the Association for Consumer Research, and the American Institute of Aeronautics and Astronautics. Mr. Blomberg holds B.S. and M.S. degrees in Industrial and Management Engineering from Columbia

University.  Blomberg reviewed various materials about the accident, as described in his expert report, and on May 21, 2013, he conducted an on-site examination of the accident scene and visited 21 other convenience stores located in the greater Kansas City area.

Based on his examination, Blomberg concludes that the motor vehicle accident occurred because of the error committed by C.M. (*i.e.*, mistakenly pressing the accelerator instead of the brake) and that this error was independent of the design of the convenience store's property.  He opines that the design of the property was fully consistent with the prevailing practices of the convenience store industry and that it was neither defective nor unreasonably unsafe.  Blomberg concludes that an alternate design of the property, such as one using bollards, likely would have changed the dynamics of the accident, but he also opines that there are significant, inherent risks in using bollards or other barriers and in designing parking lots without head-in parking. Because of these risks, Blomberg opines that bollards are not a preferable choice for the design of the convenience store property at issue in this case.

Plaintiff contests Blomberg's qualifications to testify on the specific issues in this case, as well as the relevance and reliability of his opinions.  The Court first addresses Blomberg's qualifications and then assesses the reliability and relevance of his opinions.

### 1.   Qualifications

Plaintiff argues that Blomberg's expert testimony should be excluded because he has no experience or expertise to opine on the dangerousness of the convenience store parking lot or whether bollards or other barriers should have been installed.  Blomberg is an engineer with 45 years of experience in safety research and approximately 41 years of experience in pedestrian safety research.  For almost 20 years, Blomberg served as the safety consultant to the East Ramapo Central School District in East Ramapo, New York.  In that position, he consulted with

the school district on the design of the parking lots for the approximately 200 schools in that district.  These parking lots included head-in or diagonal parking.  Blomberg also testified that he performed this same type of consulting work for several other school districts in the same geographic area.  Blomberg also has directed research studies on the design of shopping center parking lots and has created model parking lot designs.  He has written research reports about parking lot designs for commercial stores, and several of these reports involved preventing pedestrian accidents.  His research also includes the evaluation of specific parking lot designs and the configuration of parking lots.

Plaintiff attacks Blomberg's qualifications by asserting that he has never been hired to design or consulted to design a parking lot for a commercial establishment (including a convenience store, as is involved in this case), he has not published any articles about parking lot design, and he has never provided expert opinion or testimony in a case involving convenience store parking lots with head-in parking (or the design or safety of such a parking lot).  Although plaintiff criticizes Blomberg's lack of specific knowledge about convenience store parking lot designs, these arguments go to the weight and not the admissibility of Blomberg's testimony. *See Utility Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*, 267 F.R.D. 368, 371 (D. Kan. 2010) (refusing to exclude an expert witness's testimony based on his lack of specific experience in the trailer industry; rather, this was a subject "defendants may explore . . . on cross examination.")

Plaintiff also takes issue with Blomberg's observations of 21 other convenience stores that he visited in the Kansas City area on his way to the airport after inspecting the site of the accident in Gardner, Kansas.  Plaintiff argues that none of these other stores were configured in the same way as the convenience store at issue, which had gas pump islands but no gas pumps.

Plaintiff also criticizes Blomberg for failing to gather historical information about other vehicle incursion accidents at these convenience stores.  The Court determines that Blomberg's inspection of the 21 other convenience stores does not render him unqualified to testify as an expert in this case.  Rather, plaintiff's criticisms about Blomberg's inspection of these 21 convenience stores go to the weight of the evidence, and plaintiff may cross-examine Blomberg on those topics.

Based on his experience described above, the Court concludes that Blomberg is qualified to testify on the matters set forth in his expert report.  "Experience alone—or experience combined with other knowledge, skill, training, or education—may provide a sufficient foundation for expert testimony."  *Utility Trailer Sales of Kansas City, Inc.*, 267 F.R.D. at 370 (citing Fed. R. Evid. 702 advisory committee notes).  However, a witness "relying solely or primarily on experience" must "explain how the experience leads to the conclusion reached." Fed. R. Evid. 702 advisory committee notes; *see also United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003).  The Court has reviewed Blomberg's expert report and the transcript of his deposition where he explained that he bases his opinions on his training and experience as an engineer and researcher.  The Court is satisfied that Blomberg is qualified to testify about the opinions in his expert report.

## 2.  Reliability

Plaintiff next contends that Blomberg's opinions are not based upon reliable facts.  In formulating his opinions, Blomberg reviewed the Johnson County, Kansas zoning ordinances and a PowerPoint presentation he found on the internet.  With respect to the Johnson County, Kansas zoning ordinances, Blomberg admits that he is not a legal expert and he does not know if these zoning requirements even apply to the convenience store at issue.  Blomberg testified that

the convenience store at issue is located within the city limits of Gardner, Kansas, but the Johnson County, Kansas zoning ordinances apply only to unincorporated areas of the County which no city has annexed.[4]   Therefore, the Court concludes that Blomberg's reliance on these zoning ordinances is inappropriate here.   As *Daubert* cautioned, an expert must base his or her opinion on "reasoning or methodology [that] properly can be applied to the [actual] facts in issue."   *Daubert*, 509 U.S. at 592–93.   Here, the County's zoning ordinance cannot be applied to this case's facts because it does not apply to the incorporated location where the accident occurred.   Therefore, to the extent Blomberg relied on the Johnson County, Kansas zoning ordinances in formulating his opinions, the Court excludes those opinions because they are based on unreliable facts.

Turning next to Blomberg's reliance on the PowerPoint presentation that he located on the internet, Blomberg testified that he found this document on the National Association of Convenience Stores ("NACS") website.   Blomberg believes that it provides an example of what the convenience store industry considers as an acceptable model store.   Plaintiff challenges Blomberg's characterization of this document as showing what is acceptable in the industry because the PowerPoint presentation itself contains a disclaimer that the opinions expressed in it do not necessarily state or reflect those of the NACS.   Plaintiff further argues that Blomberg's reliance on this document is improper because he does not know anything about the authors' knowledge, training, experience, or expertise in the convenience store parking lot industry, he did not attend the conference where the presentation was made, and the document does not address safety measures in convenience store parking lots.   The Court agrees with plaintiff that

---

[4]      *See* Johnson County, Kan., Zoning and Subdivisions Regulations art. 1, § 3 (July 1997). (Doc. 174-1.)   The Court takes judicial notice of the regulations.   *See, e.g.*, *Jones v. Wildgen*, 320 F. Supp. 2d 1116, 1120 (D. Kan. 2004) (taking judicial notice of portions of the City Code in an action challenging the constitutionality of municipal ordinances).

the PowerPoint presentation is not a reliable indicator of what the convenience industry considers as an acceptable model of store, especially because it contains an express disclaimer that it does not state or reflect the views of the NACS.  Moreover, Blomberg is unable to provide any background information about the authors of the presentation to show that they are a reliable source for what is acceptable in the industry.  Accordingly, the Court excludes Blomberg's opinions to the extent they are based on the PowerPoint presentation.

Last, plaintiff contends that Blomberg ignored facts that were unfavorable to defendant in reaching his conclusions, and by doing so, made his opinions unreliable.  Specifically, plaintiff complains that Blomberg failed to consider other vehicle incursion incidents at defendant's stores across the country, the prior vehicle incursion accident that occurred in 2009 at the convenience store at issue, and defendant's installation of bollards at newly constructed or remodeled stores.  The Court determines that Blomberg's failure to consider facts that disfavor defendant does not render his opinions so unreliable, however, that the jury should not hear them.  As our Court has explained before, an expert's decision not to consider certain facts in formulating his opinions is a matter for cross-examination, and not exclusion, because that decision goes to the weight of the testimony, not its admissibility.  *See In re Urethane Antitrust Litig.*, MDL No. 1616, No. 04-1616-JWL, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) ("The extent to which [the expert witness] considered the entirety of the evidence in this case is a matter for cross-examination.")  The Court declines to exclude Blomberg's opinions on this basis.

### 3.  Relevance

Finally, plaintiff argues that Blomberg's proffered testimony is not relevant to the issues in this case.  Plaintiff moves for the exclusion of seven specific opinions that are asserted by

11

Blomberg either in his expert report or deposition.[5]  The Court addresses each of these proffered opinions in turn below.

### a.   Opinion About the Nature of the Driver

Blomberg opines that the "root cause" of the accident was human error.  He describes C.M. as an "unlicensed and totally inexperienced 14 year old" driver, who was not experienced with driving in general or the Mercedes SUV that she was driving at the time of the accident.  He notes that C.M. admitted that she pressed the accelerator instead of the brake, and he opines that C.M.'s error caused the accident.  Specifically, he states in his expert report that the pedal error committed by C.M. made an accident "inevitable."  Blomberg also testified in his deposition that if C.M. had been a more experienced driver, the likelihood of committing the pedal error would have been lower.

Plaintiff's argument misstates Blomberg's opinion.  Plaintiff claims that his opinion "that the accident was inevitable due to the nature of the driver is not based upon facts, scientific studies or any relevant experience, education or training."  Pl's. Mem. in Supp. of Mot. to Limit or Exclude the Test. of Expert Richard D. Blomberg (Doc. 163 at 13).  But Blomberg's opinion is not phrased that way in his report.  Rather, Blomberg states that C.M.'s <u>pedal error</u> (a fact that is not disputed) made <u>an accident</u> inevitable.

Plaintiff also argues that Blomberg's opinion that the driver was untrained, inexperienced, and immature is speculative.  The Court disagrees.  Blomberg reviewed C.M.'s deposition in formulating his expert opinion.  C.M. testified that she was 14 years old on the date of the accident and that she did not have a driver's license at that time.  She also testified that

---

[5]     Although plaintiff argues in the introduction to this section of her motion that certain proffered testimony is not relevant to the issues in the case, this portion of her motion also attacks the reliability of certain, specific opinions.  The reliability of these certain opinions is also addressed below, where applicable.

prior to the accident, she had only driven about two or three times on back roads for about ten or fifteen miles each time.  C.M. also admitted that she had never driven the Mercedes SUV before the accident.  Blomberg's opinion that the driver was untrained and inexperienced is supported by sufficient facts to satisfy the relevance threshold of the analysis.

Plaintiff also contends that Blomberg's opinion that there was a higher risk of pedal error because C.M. was untrained and inexperienced is not relevant to the issues in this case.[6] Blomberg admits that unintended acceleration occurs in drivers of all ages, that pedal error is a "known phenomenon" in the traffic safety industry, and that the accident in this case would not have been prevented if C.M. had a learner's permit authorizing her to drive.  The Court finds that these arguments are more appropriate for cross-examination rather than determining the admissibility of Blomberg's testimony.  Blomberg's opinion about the characteristics of the driver is relevant, and the Court declines to exclude this expert testimony.

### b.  Opinion that the Parking Lot Design Meets Regulations

Plaintiff moves to exclude Blomberg's opinion that the convenience store parking lot at issue complies with the Johnson County, Kansas zoning ordinances.  As explained above, these ordinances do not apply to a convenience store located within the city limits of Gardner, Kansas, which is where defendant's store is located.  Therefore, Blomberg's opinion that the parking lot complies with the Johnson County, Kansas zoning ordinances is not relevant to the issues in this case, and the Court excludes this opinion.

---

[6]      In the heading of its argument, plaintiff contends that Blomberg's opinion is not based on any relevant experience, education or training, but plaintiff does not expand on this argument in the motion.  As defendant points out, Blomberg has worked on numerous studies involving pedestrian safety and driver behavior.  He also has published reports on driver education, including a report that recommended a new system of driver education, and surveyed the licensing practices in the 50 states.  The Court is satisfied that Blomberg possesses sufficient relevant experience to express this expert opinion.

### c.   Opinion that the Use of Head-In Parking Without Bollards is Standard in the Convenience Store Industry, that the Design of the Parking Lot at Issue is not Unreasonably Dangerous, and Any Other Design Would Be Significantly More Dangerous

Blomberg renders three opinions about the convenience store parking lot at issue in this case.  He opines that:  (1) the use of head-in parking without bollards or other protective barriers is standard in the convenience store industry; (2) the parking lot design at the convenience store at issue in this case, which consisted of head-in parking without bollards or other protective barriers, is neither defective nor unreasonably dangerous; and (3) any other parking lot designs are more dangerous.

Plaintiff seeks to exclude all three opinions by arguing that Blomberg lacks knowledge of the industry standard for convenience stores, and therefore his opinion is not reliable.  Indeed, Blomberg testified that he did not find any document in his research that identified an industry standard for the use of bollards.  Blomberg instead bases his opinion on his personal observations of the 21 conveniences stores he visited in the Kansas City area and the PowerPoint presentation that he downloaded from the NACS website.  The Court agrees with plaintiff that Blomberg's opinion about what is "standard in the convenience store industry" is not reliable.  As it has already explained above, the Court excludes Blomberg's opinions that are based on the PowerPoint presentation because it is unreliable.  The Court further finds that Blomberg's visits to 21 conveniences stores in the Kansas City area do not provide a sufficiently reliable basis for him to render an opinion on the "standard in the industry" for convenience stores.  Therefore, the Court excludes Blomberg's opinion that the use of head-in parking without bollards or other protective barriers is standard in the convenience store industry.

The Court declines to exclude the remaining two opinions, however.  The Court finds that Blomberg's training and experience as an engineer and a researcher provide him a reliable basis to opine about parking lot designs.  The Court therefore rejects plaintiff's challenges to Blomberg's opinion that the parking lot design at the convenience store at issue in this case, which consisted of head-in parking without bollards or other protective barriers, is neither defective nor unreasonably dangerous and his opinion that any other parking lot designs are more dangerous.

### d.   Opinion that the Installation of Bollards Would Not Have Prevented the Accident, but Would Have Changed the Nature, Severity, and/or the Victim of the Accident

Blomberg also opines that the installation of bollards at the subject convenience store would not have prevented an accident, but it would have changed the nature, severity, and/or the victim of the accident.  He states in his expert report that, in this case, the presence of bollards "might" have prevented the Mercedes SUV from injuring plaintiff.  However, in that scenario, the Mercedes SUV would have hit a bollard which may have resulted in injuries to the vehicle's occupants, damage to the vehicle, "possible" damage to the vehicle(s) parked adjacent to the Mercedes SUV, and "possible" injuries of a different nature to plaintiff and other pedestrians.

Plaintiff argues that this opinion is based on speculation and therefore should be excluded.  The Court disagrees.  Although expert opinions "'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required.'"  *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)).  The proponent of expert testimony is not required to prove that the expert is "undisputably correct."  *Id.* (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th

Cir. 1999)).  Rather, the proponent "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements."  *Id.* (citing *Mitchell*, 165 F.3d at 781).  Here, the Court concludes that Blomberg's experience with safety and pedestrian research provides a sufficiently reliable basis for the jury to hear his opinion that installing bollards would have changed the nature of the accident.  Plaintiff's arguments that Blomberg ignored certain facts when formulating this opinion or that he is unable to state with absolute certainty the outcome of the accident had bollards been installed are proper subjects for cross-examination.  The Court declines to exclude this expert opinion.

### e.   Opinion that Defendant is a Safety Conscious Company

Blomberg testified in his deposition that defendant is a safety conscious company. Plaintiff argues that this opinion is unreliable because Blomberg admits that he has not spoken with anyone at defendant's company and the only basis for his opinion is what he read in defendant's corporate representative's deposition.  He also admits that he did not investigate whether defendant considered the safety of the design of the parking lot or pedestrian walkway at the convenience store at issue.   Defendant did not address this specific opinion in its Opposition to plaintiff's motion.  The Court agrees with plaintiff.  This particular opinion is not reliable or relevant to the issues in this case, and therefore, the Court excludes Blomberg's opinion that defendant is a safety conscious company.

### 4.  Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's Motion to Exclude or Limit the Testimony of Expert Richard D. Blomberg.  The Court determines that Blomberg is qualified to testify as an expert in this case.  The Court also finds

certain of his opinions are reliable and relevant as described above, and therefore those opinions are admissible as expert testimony.  The Court, however, excludes Blomberg's opinions that are based on the Johnson County, Kansas zoning ordinances and on the PowerPoint presentation that he located on the NACS website because these materials are not reliable or relevant sources of information to the issues in this case.  The Court also excludes Blomberg's opinions that (1) the convenience store parking lot at issue complies with the Johnson County, Kansas zoning ordinances, (2) the use of head-in parking without bollards or other protective barriers is standard in the convenience store industry, and (3) defendant is a safety conscious company because these opinions are neither reliable nor relevant to the issues in the case.

### C. Defendant's Motion to Exclude Expert Testimony (Doc. 166)

Defendant seeks to exclude or limit the expert opinion testimony of four individuals designated by plaintiff as expert witnesses: (1) Robert Reiter, an expert in the design and use of safety devices in the convenience store industry; (2) Warren Vander Helm, an expert in parking design and planning; (3) Anthony Gamboa, PhD, MBA, a vocational economic analyst; and (4) Laura Lampton, a registered nurse and life care plan specialist.  The Court addresses the opinion testimony of each one of plaintiff's proffered expert witnesses in turn below.

### 1. Robert Reiter

Plaintiff has designated Robert Reiter to offer expert opinion testimony about: (1) the dangerousness of the convenience store at issue; (2) the foreseeability of the accident; and (3) the cost and feasibility of safety devices to protect customers and to prevent vehicle incursions. Defendant moves to exclude Reiter's opinions about the dangerousness of the convenience store property and the foreseeability of the accident arguing that these opinions are unreliable and not relevant.

17

### a.  Qualifications

Defendant does not challenge Reiter's qualifications to opine about the dangerousness of the convenience store property or the foreseeability of the accident.  The Court notes that, for more than ten years, Reiter has engaged actively in the research and development of safety devices, such as bollards, to protect buildings and pedestrians from vehicle incursions.  Reiter has worked with industry groups to set standards for testing and installation of bollards and barriers for government, public agencies, utilities, private companies, and underwriters and insurers.  Reiter also founded the Storefront Safety Council to bring attention to the problem of accidental vehicle incursion, promote academic and industry focused research on the scope of the problem, present best practices and solutions, and to educate the public, industry groups, and code enforcement entities about emerging crash test standards and potential solutions.  Reiter is qualified to provide expert testimony on the dangerousness of the convenience store property and the foreseeability of the accident in this case.

### b.  Reliability

Defendant contests the reliability of Reiter's opinion that a vehicle incursion accident was foreseeable.  Reiter bases this opinion on calculations about the number of accidental vehicular incursions that occur each day at convenience stores and the rate with which pedal error causes such accidents.  Reiter states that the frequency of accidental vehicular incursions at convenience stores and the rate at which pedal error causes such accidents made the accident at issue here foreseeable to defendant.  Defendant contends that these calculations are based upon flawed data and unsupported assumptions, and therefore are unreliable.

     **i.  Opinion that about 20 accidental vehicular incursions occur every day at convenience stores in the United States**

Reiter opines in his expert report that accidental vehicle incursions occur about 40 to 50 times each day in the United States.  Reiter further estimates that convenience stores, specifically, experience accidental vehicular incursions about 20 times per day.  He reaches the estimate for convenience stores by relying on a study that he conducted with the Texas Traffic Institute at Texas A&M University in which he analyzed data from two convenience store chains.  In that study, Reiter reviewed data from about 8,000 conveniences stores over a five year period to conclude that vehicular incursions occur about 20 times per day at convenience stores.  Defendant argues that this sample size is only about five percent of the convenience stores in the United States and that this "limited data" does not provide a reliable basis for Reiter to opine that the accident was foreseeable.

The Court disagrees that the sample size of the data renders Reiter's opinion unreliable.  This opinion is based on Reiter's own research and study, which, as plaintiff points out, was peer reviewed by Texas A&M University.  Defendant is free to cross-examine Reiter about the sample size of the data, but the Court declines to find that the opinion is unreliable on this basis.  Further, the Court disagrees with defendant's reliance on *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521 (6th Cir. 2012).  In that case, the Sixth Circuit affirmed the district court's exclusion of an expert's opinion because of "four red flags" in the methodology:  "anecdotal evidence, improper extrapolation, failure to consider other possible causes, and, *significantly*, a lack of testing."  *Id.* at 528 (emphasis added).  Specifically, the court in *Newell Rubbermaid* faulted the expert for opining that a latching or spring-loaded rear door was necessary to make a forklift safe when the expert never actually tested either of the alternative designs and his

opinion favoring a rear guard door was contrary to industry standards. *Id.* at 528–29. Conversely, in this case, Reiter has sufficient experience in the research and development of safety devices to protect pedestrians from vehicle incursions, and he relied on sufficient data when formulating his opinion about the number of vehicle incursions that occur on a daily basis at convenience stores.

Defendant also argues that Reiter's opinion did not account for other factors that may affect a convenience store's rate of vehicular incursions, including:  the number of customers visiting the store, the age of the customers, the design of the property, or the state where the store is located.  Defendant contends that Reiter's failure to consider these other factors does not allow him to draw a correlation between accidental vehicle incursions at other stores with the convenience store at issue in this case.  While Reiter's failure to consider these other factors may persuade a jury that his method was not the "superior" method for calculating the rate of vehicular incursions across the county, the Court does not find that it renders the opinion so unreliable that the jury should not hear it.  *See Util. Trailer Sales of Kansas City, Inc.*, 267 F.R.D. at 371 (stating that while the expert may not have employed the "best" method in making his calculations, "the standard for admissibility is reliability, not superiority").

The Court also does not agree with defendant's reliance on *Parker v. Wal-Mart Stores, Inc.*, 267 F.R.D. 373 (D. Kan. 2010).  In that case, the proposed expert witness opined that defendant's mode of operation was negligent based on the number of slip-and-falls that had occurred at the store in the last two years, but the expert knew none of the details of any of the accidents, including the condition of the floor, whether defendant was at fault, how many employees were working, or how many customers were in the store at the time. *Id.* at 376. Judge Murguia excluded this opinion as unreliable because the expert witness did not rely on any

industry standards in reaching this conclusion, and he did not have any reliable source to compare the number of slip-and-falls at the store in relation to other stores of a similar size and customer base. *Id.* Reiter's opinion differs from the expert opinion at issue in *Parker*. In this case, Reiter used reliable sources in formulating his opinion about the rates of vehicular incursions. Further, he is not contending that defendant was negligent based simply on the number of accidents at its store. Rather, Reiter has estimated the number of vehicular incursions that occur on a daily basis at convenience stores around the country, and from that data, he opines the vehicle incursion accident in this case was foreseeable to defendant as a convenience store owner. To the extent defendant criticizes Reiter's opinion based on his failure to consider other factors, defendant certainly will have the chance to explore those concerns on cross-examination.

Finally, defendant complains that Reiter provides only an "estimate" that about 20 vehicular incursion accidents occur daily at convenience stores and that he is unable to state with any certainty the probability of a vehicle incursion at the convenience store at issue. But, as noted above, the proponent of the testimony need not prove that the expert is "undisputably correct." *Goebel*, 346 F.3d at 991 (citing *Mitchell*, 165 F.3d at 781). The Court is satisfied that Reiter's method in reaching this opinion is scientifically sound and that his opinion is based on facts that satisfy Rule 702's reliability requirements. *Id.* (citing *Mitchell*, 165 F.3d at 781). Therefore, Reiter's opinion that about 20 vehicular incursion accidents occur on a daily basis at convenience stores is reliable, and he may provide expert testimony about this opinion.

### ii. Opinion that 41% of accidental vehicle incursions are caused by pedal error

Reiter also opines that pedal error accounts for 41% of all accidental vehicle incursion accidents. This number is not specific to convenience stores; rather, it encompasses the universe

of vehicle into building crashes.  Reiter reaches this conclusion based on his review of media reports, law enforcement reports, and data from other convenience store chains.  However, he testified that more than 90% of the data that he used to estimate the percentage of pedal error came from national media reports.  Defendant argues that media reports are inherently unreliable, and therefore Reiter's opinion is inadmissible.  Defendant points out that one of the studies that Reiter relied upon in forming his opinions cautions about the use of media reports because of competing and complementary issues that may bias the reporting of pedal misapplication crashes.  *See* National Highway Traffic Safety Administration, DOT HS 811 597 Pedal Application Errors (Mar. 2013) (Doc. 167-5 at 4).  That study further recognizes that even reported incidents of pedal error may contain missing data if the media report does not include information about the driver, the vehicle, the crash location, any pre-crash maneuvers, or other specifics of the crash.  (*Id.* at 30.)  The Court agrees that Reiter's heavy reliance on media reports to reach his estimate that pedal error accounts for 41% of vehicle incursion accidents renders this opinion unreliable.  Therefore, the Court excludes this opinion.

While the Court excludes this particular opinion, the Court does not conclude that Reiter's reliance on this opinion renders his entire testimony unreliable and inadmissible.  Rather, the Court is satisfied that Reiter's other opinions are reliable based on his opinions about the rate of vehicle incursions generally and specifically at convenience stores along with his experience in the industry.

### c.  Relevance

Last, the Court considers whether Reiter's opinions are relevant.  In performing this analysis, the Court must determine whether the expert has applied the principles and methods to

the facts of the case such that his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Defendant challenges the relevance of Reiter's opinions by arguing that his opinions apply "generally" to any retail store with head-in parking, but do not account for the specific circumstances of the accident at issue in this case. Defendant asserts, and Reiter agrees, that it was not foreseeable to defendant that a 14-year-old unlicensed, untrained, and inexperienced driver would be driving a vehicle in the convenience store parking lot where pedestrians were present. Rather, Reiter bases his foreseeability opinion on his research on the rate of vehicle incursions at convenience stores on a daily basis and his other experience in the industry. For the same reasons explained above, defendant's criticisms about Reiter's failure to account for certain, specific information involving the other vehicle incursions are proper subjects for cross-examination, but it does not require exclusion of his opinion.

Defendant also contends that Reiter's opinions about the dangerousness of the parking lot and the foreseeability of the accident amount to inadmissible legal conclusions. Defendant argues that these opinions usurp the function of the jury, and therefore are inadmissible. Fed. R. Evid. 704 permits expert testimony that "embraces an ultimate issue to be decided by the trier of fact." However, the Tenth Circuit has held that "[w]hile testimony on ultimate facts is authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored." *Specht v. Jenson*, 853 F.2d 805, 808 (10th Cir. 1988). The line drawn by the Tenth Circuit between admissible and inadmissible evidence regarding legal issues is narrow. *Id.* at 809. Expert testimony is admissible so long as "the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809–10. Here, the Court finds that Reiter's opinions are admissible to the extent that they

express his opinions about the adequacy of the parking lot design and the foreseeability of curb-over incidents at convenience stores. *See, e.g., Storts v. Hardee's Food Sys., Inc.*, Nos. 98-3285, 98-3320, 210 F.3d 390, 2000 WL 358381, at *13 (10th Cir. Apr. 6, 2000) (unpublished) (an expert's opinion about the foreseeability of the plaintiff's abduction from a restaurant parking lot that was based on the frequency of types of reported crimes was not improper testimony on the ultimate issue where the expert was questioned in detail about the other types of crime upon which he based his opinion and the court gave appropriate cautionary instructions to the jury). But the Court finds that any opinion that constitutes a purely legal conclusion is inadmissible and may not be considered on summary judgment. Of course, defendant may raise appropriate objections during trial if counsel believes that some of Reiter's testimony represents an attempt by plaintiff to "define the legal parameters within which the jury must exercise its fact-finding function." *Specht*, 853 F.2d at 809–10.

Defendant next asserts that Reiter's opinions are based on evidence about other accidents that are not similar to the accident at issue in this case, and therefore his opinion is not relevant to this case. Defendant cites *Black v. M& W Gear Co.*, 269 F.3d 1220 (10th Cir. 2011), as support for its position, but that case appears to support admission of Reiter's opinions, not their exclusion. In *Black*, the Tenth Circuit considered whether a district court had erred by admitting expert opinion that relied on statistics about other accidents that were not shown to be "substantially similar" to the accident at issue in the case. *Id.* at 1227. The court held that "under circuit precedent . . . experts are allowed to base their opinions on otherwise inadmissible evidence if the basis upon which the evidence would otherwise be considered inadmissible is reliability or relevance concerns." *Id.* at 1229. The court found that the expert's opinion about the other accidents was properly admitted because the substantial similarity requirement derives

24

from relevance concerns, and therefore the expert could base his opinion on this inadmissible evidence. *Id.* Likewise, in this case, Reiter's reliance on information about other accidents does not require exclusion of his opinion. Moreover, the other accidents upon which Reiter relies are not substantially similar to the accident at issue. Defendant points out that Reiter is unable to identify the ages of the motorists involved in those accidents, the locations of the accidents, or whether the incidents involved head-in parking. But each of the accidents involved a vehicle jumping the curb and striking a pedestrian and/or storefront, which resembles the facts of the accident at issue here. The Court declines to exclude Reiter's opinion on this basis. [7]

Finally, defendant argues that Reiter's opinion that the accident was foreseeable and that bollards should have been installed at the convenience store is improper and prejudicial. Defendant argues that Reiter is unable to determine the likelihood of a vehicle incursion incident at the convenience store in issue, and therefore, his opinion is based only on his subjective belief. The Court disagrees. Reiter bases his opinion on reliable data involving the rate of vehicle incursions and his experience as addressed above. Defendant's arguments about what Reiter does not know or fails to consider about the convenience store at issue go to the weight and not the admissibility of the opinion. The Court also does not find that defendant has demonstrated prejudice at this stage of the proceedings. The Court will consider this opinion on summary judgment, but as noted above, defendant remains free to challenge the admissibility of any of the underlying data before trial.

For all these reasons, the Court is persuaded that Reiter's expert testimony would aid the jury to understand the issues in this case. Therefore, the Court finds that Reiter's opinions are relevant.

---

[7]     The Court makes clear that it is not ruling on the admissibility of data involving other accidents. That issue is not before the Court at the present posture.

## 2.  Warren Vander Helm

Plaintiff has designated Warren Vander Helm to offer expert opinion testimony about the defective and unreasonably dangerous design of the convenience store parking lot at issue and the foreseeability of the accident.  In his expert report, Vander Helm opines that the premises of the convenience store at issue in this case was not reasonably safe in that it failed to (1) maintain a safe walkway free of hazards and (2) separate vehicular traffic from store patrons.  Therefore, Vander Helm states that these purported shortcomings "creat[ed] foreseeable injury to patrons." (Doc. 169-2 at 2.)

### a.  Qualifications

Defendant does not challenge Vander Helm's qualifications.  The Court notes that Vander Helm is the Managing Partner of Parking Design Group, LLP, a company which specializes in the design, planning, and management of parking lots and multi-level parking structures.  Vander Helm has over 30 years of parking design and planning experience, including land-use planning, site evaluation, conceptual design, needs assessment, parking studies, feasibility studies, premises liability, operations and management, and parking facility design. He also has provided parking design consultation to architects, developers, commercial property owners, and municipalities throughout the country, and he has helped develop and plan commercial parking operations in over 80 cities throughout the United States.  Vander Helm also has provided management consulting to parking assets for shopping centers, strip malls, restaurants, universities, public buildings, hotels, municipalities, business parks, apartment communities, and mixed-use environments, including advice about sustainable parking management plans.  The Court finds that Vander Helm is qualified to provide expert opinion testimony in this case.

### b.  Reliability

Defendant contends that Vander Helm's opinions are not reliable because he did not

perform his own research in forming his conclusions; rather, he relies on the data compiled by

Robert Reiter about the rate of accidental vehicle incursions and pedal error.  An expert may

base his opinion on facts or data that experts in the particular field would rely on reasonably in

forming an opinion on the subject.  Fed. R. Evid. 703.  The Court has reviewed the materials

cited by Vander Helm and determines that they are "of a type reasonably relied upon by experts

in the particular field," as required by Fed. R. Evid. 703.

Here, defendant argues, as it did above, that the underlying data provided by Reiter is

unreliable.  Therefore, defendant asserts that Vander Helm's opinion is not reliable because it is

based on the same flawed data.  As explained above, the Court finds that Reiter's opinion that

some 20 vehicle incursions occur on a daily basis at convenience stores is based on reliable data

and therefore admissible.  The Court excludes Vander Helm's opinion that 41% of vehicle

incursions are caused by pedal error because that opinion is based predominately upon media

reports which renders it unreliable.

The Court therefore excludes Vander Helm's opinions to the extent they are based on

Reiter's statistic that 41% of vehicle incursions occur due to pedal error.  The Court does not find

that Vander Helm's reliance on this particular piece of data renders his entire opinion testimony

inadmissible.  Rather, the Court is satisfied that Vander Helm's opinions are reliable based on his

consideration of Reiter's opinion about the rate of vehicle incursions at convenience stores and

his experience in the industry of parking lot design and planning.

Defendant further challenges Vander Helm's opinions based on information that he

admittedly does not know.  Vander Helm testified that he does not know how many vehicle

incursion accidents happen on a daily basis at convenience stores like the one at issue in this case, how many individuals were injured from vehicle incursions involving head-in parking (for either the year of the accident or the 5 years preceding the accident), how many individuals sustained injuries at retail establishments from vehicle incursions, or how many vehicle incursions result from pedal error.  Defendant contends that without such information, Vander Helm's opinion that the design of the parking lot was dangerous is based on speculation.  The Court disagrees.  As described above, Vander Helm has extensive experience in parking lot design and planning, upon which he bases his opinions in this case.  His lack of knowledge specific to vehicle incursion accidents is an appropriate topic for defendant to explore on cross-examination, but it does not require exclusion of his opinion testimony.

### c.  Relevance

In arguing that Vander Helm's opinions are not relevant, defendant makes the same arguments it made when objecting to the relevance of Robert Reiter's opinions.  Defendant contends that Vander Helm's opinions will not assist the trier of fact because they apply "generally" to any retail store with head-in parking without accounting for the specific circumstances of the accident at issue in this case.  Defendant also argues that Vander Helm's opinions must be excluded because they are inadmissible legal conclusions.  Defendant also criticizes Vander Helm for basing his opinion on Reiter's data which defendant contends is flawed and fails to account for other certain factors.  For the same reasons addressed above, the Court rejects these arguments.  The Court finds that Vander Helm's opinions are relevant to the issues in this case, and any concerns raised by defendant are better addressed through cross-examination.

### 3.  Anthony Gamboa

Defendant next seeks exclusion of the expert opinion testimony of Anthony Gamboa. Plaintiff has designed Gamboa to offer expert opinion testimony about plaintiff's loss of earning capacity as a result of the injuries she sustained in the accident and the present value of the plaintiff's future medical treatment, as described in the life care plan prepared by Laura Lampton.  Defendant does not challenge Gamboa's qualifications to provide expert testimony in this case.  The Court has reviewed Gamboa's curriculum vitae and determines that he is qualified to render expert testimony in this case based on his education, training, and experience.

Instead, defendant contends that Gamboa's expert testimony is unreliable, based on speculation, and not supported by the evidence.  Specifically, defendant claims that Gamboa's opinion is based on the underlying assumption that plaintiff sustained a permanent physical impairment which defendant contends is not supported by the evidence.  In preparing his expert opinion in this case, Gamboa interviewed plaintiff and obtained information about her medical condition.  Plaintiff reported to him that she has difficultly with prolonged walking and prolonged standing, she is unable to run anymore, she must work in a job that allows her to sit, she is unable to squat or kneel, and she may likely require knee replacement surgery in the future.  After the interview, Gamboa then reviewed plaintiff's medical records to determine whether plaintiff's self-described limitations were consistent with the limitations described by her health care providers in the medical records.  Here, Gamboa determined that plaintiff's description of her injuries was congruent with the nature of the impairment described in the medical records.  Based on the physical limitations described by plaintiff and confirmed in her medical records, Gamboa concluded that plaintiff has a mobility disability as defined by the U.S.

Census Bureau's American Community Survey ("ACS").  Under this definition, an individual has a mobility disability if she has serious difficulty walking or climbing stairs.

Gamboa also testified in his deposition that the first step in performing his vocational economic assessment is to determine whether a physician has diagnosed the individual with a permanent physical impairment.  Gamboa admits that if there is no medically-diagnosed permanent physical impairment, then he does not perform a vocational economic assessment on the loss of earning capacity.  In his case, Gamboa is not aware of any physician diagnosing plaintiff with a permanent physical impairment.  Rather, he assumes that information is forthcoming.  And, he admits that if there is no permanent physical impairment diagnosed by a doctor, then plaintiff has suffered no loss of earning capacity.

Defendant contends that Gamboa's opinion is based on unsubstantiated evidence because no physician has diagnosed plaintiff with a permanent physical injury or has concluded that she has serious difficulty walking or climbing stairs.  The Court does not find that the assumption that plaintiff suffers from a permanent physical impairment renders Gamboa's testimony sufficiently unreliable to compel its exclusion.  Rather, the Court finds that defendant's concerns about the underlying assumptions of Gamboa's opinion are better challenged through cross-examination than in determining the admissibility of expert testimony.

Moreover, plaintiff's treating orthopedic surgeon, who performed surgery on her knees, testified that while plaintiff is not currently subject to any medical restrictions, he does anticipate that plaintiff will have limitations on her daily living activities due to her knee injuries.  He described the knee fractures that plaintiff sustained and the resulting damage to the knee cartilage that has caused plaintiff to develop arthritic knees.  Plaintiff's treating orthopedic surgeon predicts that chances are high that plaintiff will develop bone to bone arthritic changes in her

right knee, and at some point plaintiff will mostly likely have no cartilage on the end of her right

knee.  While he recognizes that it is impossible to predict, plaintiff's treating orthopedic surgeon

testified that there is a high probability that plaintiff will require total knee replacement surgery

in the future.  The orthopedic surgeon also had discussions with plaintiff about her limited

mobility and her inability to walk for more than 10 minutes due to pain.  The Court concludes

that Gamboa's opinion is based on reliable underlying facts and declines to exclude his opinion.

### 4.  Laura Lampton

Plaintiff has designated Laura Lampton to offer expert opinion testimony about the cost

of plaintiff's future needs, care, and medical treatment as a consequence of the injuries she

sustained in the accident.  Defendant challenges Lampton's opinions on two bases.

First, defendant contends that Lampton cannot testify about the medical necessity of any

future medical care or treatment because she was not designated to testify on this topic and she is

not qualified to testify about this topic because she is a registered nurse, not a medical physician.

The Court rejects this argument.  Plaintiff designated Lampton to testify about "the cost of

[plaintiff's] future needs, care, and treatment" as a result of the injuries she sustained in the

accident.  The designation included a specific reference to plaintiff's future "needs," and as

stated in her expert report, Lampton bases her opinions about plaintiff's future needs on

information she received from plaintiff's medical providers either through phone calls or from a

review of plaintiff's medical records.[8]  In fact, plaintiff designated two of her treating providers,

---

[8]     Defendant does not challenge Lampton's qualifications to provide expert opinion about a
life care plan.  Defendant only objects to Lampton's qualifications to testify about the medical
necessity of certain treatment.  As explained above, Lampton may rely on the information
provided by plaintiff's medical providers about the medical necessity of certain treatment.  The
Court further notes that it has reviewed Lampton's expert report which includes her curriculum
vitae.  Based on her education, training, and experience, the Court finds that Lampton is
qualified to provide expert opinion testimony about plaintiff's life care plan.

Dr. Molly Black and Dr. Daniel Farrell, to provide expert opinion testimony on "expected future symptoms, physical impairments and treatments." It is proper for plaintiff's treating physicians to render such opinions. *See Goeken v. Wal-Mart Stores, Inc.*, No. 99–4191–SAC, 2001 WL 1159751, at *3 (D. Kan. Aug. 16, 2011) (holding that a treating physician may testify to prognosis, the extent of present and future disability, and the need for future medical treatment as long as the opinion is based on the physician's personal knowledge gained from the care and treatment of the plaintiff). It is also appropriate for Lampton to base her opinions on the underlying information she receives from plaintiff's medical providers. *See*, *e.g.*, *O'Shea v. Welch*, No. 01-2336-JWL, 2002 WL 1974046, at *2 (D. Kan. Aug. 15, 2002) (accepting the testimony of a qualified expert life care planner who prepared a life care plan and based the future medical needs of the plaintiff on information that she received from plaintiff's treating physician).

Second, defendant argues that Lampton's report is unreliable because she includes the costs for certain future medical treatment which defendant contends is speculative and not supported by the evidence. Defendant asserts that it is speculative for Lampton to opine that plaintiff's future medical treatment will include right and left knee replacements, a hip replacement, and a cesarean section. As noted above, Lampton bases her opinion on information she received from plaintiff's medical providers. The Court finds that Lampton's opinion about plaintiff's need to undergo right knee replacement surgery is supported by information provided by plaintiff's treating orthopedic surgeon, Dr. Daniel Farrell. Dr. Farrell testified that plaintiff will likely require total knee replacement surgery on her right knee. While he notes that "it is impossible to state for sure" whether plaintiff will require knee replacement surgery on her right knee, he believes the "probability is high" that such surgery will be necessary. Plaintiff need not

show that the expert opinion is "undisputably correct" as long as the expert's method is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements. *Goebel*, 346 F.3d at 991 (citing *Mitchell*, 165 F.3d at 781). The Court is satisfied that Lampton bases her opinion on the need for right knee surgery on reliable information provided by Dr. Farrell. Therefore, Lampton may provide expert testimony about future knee replacement surgery on plaintiff's right knee.

The Court also finds that Lampton bases her opinion on plaintiff's need for a cesarean section on reliable information. Dr. Molly Black, an orthopedic surgeon and plaintiff's treating physician, testified that if plaintiff were to become pregnant at some point in her life, "most" obstetricians will require plaintiff to undergo a cesarean section due to the nature of her pelvic injury. Dr. Black further testified that plaintiff "in theory" could have a vaginal delivery if there is not a lot of scar tissue from the injury, but the obstetrician will make that call. While Dr. Black's testimony about the need for a cesarean section may not be "undisputably correct," the Court finds that her opinion is reliable. The concerns raised by defendant about plaintiff's ability "in theory" to have a vaginal delivery rather than a cesarean section may be addressed on cross-examination. The Court therefore concludes that Lampton may testify that plaintiff's future medical care may include a cesarean section.

The Court comes to a different conclusion about plaintiff's need for left knee replacement surgery and hip surgery. The record provides no reliable evidence to support Lampton's opinion that plaintiff will require these procedures in the future. Regarding plaintiff's left knee, Dr. Farrell testified that the injuries to that knee were less severe than those to the right knee. Plaintiff is currently experiencing mild to moderate arthritis on the left knee, but Dr. Farrell is unable to predict with any certainty whether plaintiff will require total knee replacement on her

left knee.  He testified that it will depend on whether her left knee experiences additional arthritic changes which will require further monitoring.  Turning to plaintiff's pelvic injury, Dr. Black testified "with 99 percent confidence" that plaintiff will not need additional orthopedic pelvic surgery, that plaintiff will not require any future care or treatment specifically for her pelvis, and that plaintiff does not have any complications or arthritic changes that would require future medical treatment for her pelvis.  The testimony about the need for left knee replacement surgery and hip surgery is not sufficiently reliable for Lampton to opine that plaintiff will require these medical procedures in the future.  Consequently, the Court excludes these opinions.

### 5.  Conclusion

As described above, the Court grants in part and denies in part defendant's Motion to Exclude Expert Testimony that seeks to exclude the testimony of Robert Reiter, Warren Vander Helm, Anthony Gamboa, and Laura Lampton.  The Court determines that each of these witnesses is qualified to testify as an expert in this case.  The Court also finds certain of the proffered opinions of these four experts are reliable and relevant as described above, and therefore those opinions are admissible as expert testimony.  The Court, however, excludes Reiter's and Vander Helm's opinions that are based Reiter's statistic that 41% of vehicle incursions occur due to pedal error.  The Court also excludes Lampton's opinions that plaintiff's future medical care includes a left knee replacement and hip surgery.  The Court denies defendant's motion in all other respects.

## II.   Motion for Summary Judgment

### A.  Uncontroverted Facts

The following facts either have been stipulated by the parties in the parties' joint stipulations of fact (Doc. 159) or are stated in the light most favorable to plaintiff, the nonmoving

party.  On September 18, 2011, C.M. was operating a 1999 Mercedes ML 320 owned by

Kenneth Keen.  About a week earlier, Keen had given his friend, Charles Conner, the keys to the

Mercedes and had asked him to keep the vehicle running while Keen was out of town for about a

month.  Around 12:30 or 1:00 p.m. on September 18, 2011, Conner went to the home of Dallas

Hartman to watch a football game.  Both Conner and Hartman consumed alcohol that afternoon

at Hartman's home.  Shortly before 6:45 p.m., Hartman told Conner that he needed cigarettes but

his car would not start.  In response, Conner told Hartman that he could take the Mercedes to buy

cigarettes.

On that date, C.M. was 14 years old, not of legal driving age, and did not have a license

to drive.  Before the accident, C.M. had driven a vehicle about two or three times on back roads

with her mother.  Despite C.M.'s inexperience with driving and her lack of a driver's license,

Hartman allowed C.M. to drive the Mercedes because he was afraid that he was too intoxicated

to drive and he had a prior DWI conviction.  Hartman rode as a passenger in the vehicle.  C.M.

drove the Mercedes from her residence to a convenience store owned and operated by defendant.

As C.M. attempted to park the vehicle at a head-in parking space in front of the convenience

store, she mistakenly pressed the accelerator instead of the brake.  The Mercedes drove over the

curb and struck plaintiff, who was standing on the sidewalk in front of the convenience store.  As

a result, plaintiff sustained injuries.

Kansas law prohibits unlicensed drivers from operating motor vehicles.  K.S.A. § 8-235.[9]

C.M. was charged in the District Court of Johnson County, Kansas with violating K.S.A. § 8-

235, based on her operation of a motor vehicle without a valid driver's license on September 18,

---

[9]     The Court may take judicial notice of the Kansas statutes.  *United States v. One (1) 1975 Thunderbird 2-Door Hardtop White in Color with Burnt Orange Vinyl Landau Top*, 576 F.2d 834, 836 (10th Cir. 1978) (citing *Owings v. Hull*, 34 U.S. 607 (1835)).

2011.[10]  Kansas law also prohibits individuals from knowingly causing or encouraging a child

under 18 years of age to commit a traffic infraction.  K.S.A. § 21-5603(a)(2).  Because of his

actions on September 18, 2011, Hartman was charged in the District Court of Johnson County,

Kansas, with unlawfully, knowingly, and willfully causing or encouraging a child under 18 years

of age to commit a traffic infraction in violation of K.S.A. §§ 21-5603(a)(2) and 21-6602(a)(1).

On May 17, 2012, Hartman pleaded guilty to the charges under K.S.A. §§ 21-5603(a)(2) and 21-

6602(a)(1).

Defendant operates approximately 1,650 stores in the United States.  Defendant is aware

of "100 plus" incidents at its convenience stores where a vehicle jumped the curb and struck the

building or a pedestrian.  Two of these "100 plus" vehicle incursions resulted in bodily injury.[11]

At the Gardner, Kansas, convenience store at issue in this case, another vehicle incursion

accident occurred in 2009.  In that instance, the driver was 47 years old and had a valid driver's

license.  The driver mistakenly hit the accelerator rather than the brake, and the vehicle jumped

---

[10]     The Court may take judicial notice of public records from other proceedings.  *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 931 F. Supp. 2d 1120, 1123 (D. Kan. 2013) (citing *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Hemphill v. Kimberly–Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009)).

[11]     Plaintiff has submitted as part of the summary judgment record several incident reports that purport to represent other vehicle incursion incidents at defendant's stores across the country.  (*See* Doc. 175-7 (Exhibit G).)  Defendant asserts that these incident reports lack foundation and cannot be considered on summary judgment.  But the Tenth Circuit does "not require an affidavit to authenticate every document submitted for consideration at summary judgment.  Rather, documents produced during discovery that are on the letterhead of the opposing, producing party are authentic per se for purposes of Federal Rule of Evidence 901." *Law Co., Inc. v. Mohawk Constr. and Supp. Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009) (citations omitted).  Also, the Court may find that a document is sufficiently authenticated given the "'[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'"  *Id.* at 1171 (quoting Fed. R. Evid. 901(b)(4)).  The incident reports were produced by defendant in this lawsuit, and many of them contain the company name and/or logo at the top of the report.  Given the circumstances, the Court finds that these incident reports are sufficiently authenticated for consideration at summary judgment.

the curb onto the sidewalk and struck the building.  At the time of the 2009 accident, defendant did not own the convenience store but acquired it shortly after it in December 2010.  Defendant concedes it knew about the 2009 accident before plaintiff was injured in the accident at issue.

Defendant has installed bollards at all of its newly constructed stores for the past 15 years.  A bollard is a vertical pipe or tube that is usually made of steel and installed in a sequence to provide a barrier between vehicles and a building or vehicles and a sidewalk.  Defendant's reason for installing bollards at its new stores is based on branding, safety, and protection of the building.  Defendant installs bollards at its new stores, regardless of whether local code requires their installation.  But defendant has not installed bollards at its older stores because the law does not require it to do so.  Defendant's corporate representative admits that the company is aware that anytime a pedestrian is standing on a sidewalk in front of one of its convenience stores that has not been built in the last 15 years, there is a risk that the pedestrian will be hit by a vehicle that hops the curb.

Plaintiff's expert, Robert Reiter, describes the accident as an "accidental vehicle incursion," which occurs when driver error or car malfunction causes a vehicle to drive into a building.  According to Reiter, one form of driver error is "pedal error," which occurs when a driver thinks her foot is on the brake but it is in fact on the accelerator, as occurred in the accident at issue.  Reiter testified that the scope of accidental vehicle incursions is not commonly realized, but the fact that they occur is commonly realized.  While vehicle incursions would not normally occur in the ordinary and reasonable operation of a vehicle, plaintiff's expert, Warren Vander Helm, states that they occur between 25 and 35 times a day.  However, Vander Helm is not aware of the number of vehicle incursions that occur on a daily basis at convenience stores like the one at issue in this case or how many individuals were injured as a result of vehicle

incursions involving head-in parking in the same year as the accident or any of the five years before that accident.  Vander Helm testified that this is the only case he knows of that involves an unlicensed, untrained, and inexperienced driver who mistook a gas pedal for the brake, drove over a curb, and hit a pedestrian.

According to Reiter, 40 to 50 vehicle incursion accidents occur in the United States each day.  Reiter further opines that each day there are 20 vehicle incursion accidents at the 160,000 convenience stores located in the United States.  Reiter states that there is a high potential for vehicle incursions with head-in parking spaces in front of convenience stores because conveniences stores, by their nature, are speed oriented and the turnover in parking is frequent. Reiter believes there is a very high risk that another vehicle incursion will occur in the next five years at the convenience store at issue.  He estimates there will be three to five additional vehicle incursion accidents at this convenience store unless steps are taken to prevent them.  Reiter is unaware of any research or evidence showing the number of vehicle incursions that have caused bodily injury to patrons standing inside or outside of a convenience store.  But Reiter estimates that fewer than 10% of all vehicle incursions cause personal injury to patrons, whether located inside or outside the store.

Plaintiff's experts, Reiter and Vander Helm, agree that plaintiff would not have been injured had C.M., an unlicensed, inexperienced, and untrained driver, not operated the Mercedes SUV on September 18, 2011.  Plaintiff's experts also agree that plaintiff would not have sustained injury had C.M. not committed the pedal error of pressing the accelerator instead of the brake.  Reiter testified that presumably plaintiff would not have been injured had C.M. not lost control of the vehicle causing it to jump the curb and strike plaintiff.  Reiter also testified that plaintiff presumably would not have been injured had C.M.'s mother stopped her from driving

38

the Mercedes.  Vander Helm testified that the accident would not have occurred without human error and C.M. would not have been in a position to mistake the gas pedal for the brake if Hartman had refused to allow C.M. to drive that night.  Vander Helm further testified that while an owner or operator of a business has a duty to protect its patrons, it does not have control over the conduct of visiting third parties or the operation of a vehicle being driven by a patron.

Reiter testified that it was not foreseeable to defendant that a 14 year old, unlicensed, untrained, and inexperienced driver would be driving a vehicle in its parking lot or that Hartman was going to put a 14 year old, unlicensed, untrained, and inexperienced driver behind the wheel of the Mercedes.  Vander Helm agrees that it is not foreseeable that a person would engage in criminal or illegal conduct.

Defendant's expert, Richard Blomberg, admits that plaintiff's injury may have had a different outcome had bollards been installed at the convenience store.  Blomberg admits that pedal error is a "known phenomenon" in the traffic safety industry and that pedal error can occur anywhere including parking lots.  Blomberg agrees that pedal error may occur in drivers of all ages.  He also agrees that whether the driver did or did not have a learner's permit to drive is not going to prevent or cause the accident at issue.

### B.  Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the nonmoving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury

could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)).  In attempting to meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Finally, summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### C.  Analysis

Plaintiff brings a negligence claim under Kansas law against defendant claiming that defendant breached it duty of care by failing to keep plaintiff reasonably safe under the circumstances.  Specifically, plaintiff alleges that defendant breached its duty by failing to install parking bollards or wheel stops or take other precautionary measures to protect the storefront and pedestrians.

### 1.  Kansas Law

In Kansas, a negligence claim requires: (1) the existence of a duty, (2) breach of that duty, (3) injury, and (4) a causal connection between the duty breached and the injury suffered. *Smith v. Kansas Gas Serv. Co.*, 169 P.3d 1052, 1057 (Kan. 2007) (quoting *Schmidt v. HTG, Inc.*, 961 P.2d 677, 693 (Kan. 1998)) (further internal quotations omitted).  "'Whether a duty exists is a question of law.'"  *Id.* (quoting *Schmidt*, 961 P.2d at 693) (further internal quotations omitted).  "Whether the duty has been breached is a question of fact."  *Id.* (internal quotations omitted).

Defendant contends it is entitled to summary judgment because it owed no legal duty to plaintiff because her injury was not foreseeable and was caused by the negligent and/or criminal conduct of third parties over which defendant had no control.  The Court must determine whether a duty existed because without a duty there can be no breach to support a negligence claim. *Nero v. Kansas State Univ.*, 861 P.2d 768, 772 (Kan. 1993) (citation omitted).

Plaintiff's negligence claim is governed by the Restatement (Second) of Torts § 344 (1965) which states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.

Restatement (Second) of Torts § 344 (1965); *see also Gould v. Taco Bell*, 722 P.2d 511, 568 (Kan. 1986) (adopting the Restatement (Second) of Torts § 344).  Comment f to this section provides:

> f.  Duty to police premises.  Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.  He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual.

Restatement (Second) of Torts § 344 cmt. f (1965); *see also South ex. rel. South v. McCarter*, 119 P.3d 1, 12 (Kan. 2005) (citing the Restatement (Second) of Torts § 344 cmt. f).

In Kansas, the owner or operator of a business is "not the insurer of the safety of its patrons or customers."  *Seibert v. Vic Regnier Builders, Inc.*, 856 P.2d 1332, 1338 (Kan. 1993). "The owner ordinarily has no liability for injuries inflicted upon patrons or customers by the criminal acts of third parties in the business' parking lot, as the owner has no duty to provide security."  *Id.*  "Such a duty may arise, however, where circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken."  *Id.*

The Kansas Supreme Court has explained that "[t]he duty of care is intertwined with the foreseeability of harm."  *Shirley v. Glass*, 308 P.3d 1, 9 (Kan. 2013) (citing *South ex rel. South v. McCarter*, 119 P.3d 1 (Kan. 2005) (injury is foreseeable so as to give rise to duty of care when defendant knows or reasonably should know that conduct likely will result in harm)).  In determining the foreseeability of the harm, Kansas courts apply the following standard:

> Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact.  Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.  When there was no evidence of a risk of harm presented, the question of foreseeability of the harm is a matter of law.

*Beshears By and Through Reiman v. Unified School Dist. No. 305*, 930 P.2d 1376, 1384 (Kan. 1997) (citing *Kansas State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587 (Kan. 1991)).

### 2.   Foreseeability of Plaintiff's Injuries

Defendant contends that it could not have foreseen the criminal actions of third parties over whom it had no control, in particular that a 14 year old unlicensed, untrained, and underage driver would drive illegally to its convenience store for an adult who had been drinking alcohol, commit a pedal error, drive the vehicle over the curb, and injure plaintiff.  However, defendants do not correctly frame the issue under Kansas law.  The Court does not consider whether "defendant should have anticipated the particular act from which the injury resulted, but whether it should have foreseen *the probability that injury might result*."  *OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1295 (Kan. 1996) (citations omitted) (emphasis added).  Therefore, the Court's operative analysis considers whether defendant, in this case, should have foreseen the probability that injury might result to plaintiff as a pedestrian on the walkway in front of its convenience store.

The Court agrees with the parties that no reported Kansas case has addressed whether a business owner is liable for injuries that a patron sustains from a vehicle incursion accident.  Numerous other courts have addressed similar factual scenarios and have arrived at differing

conclusions.  Defendant cites several cases from other jurisdictions[12] where courts have

concluded that a business owner is not liable to a patron who is injured by a vehicle in or around

the property.  *See, e.g., Stratioti v. Bick*, 704 F.2d 1052, 1055–56 (8th Cir. 1983) (applying

Minnesota law and holding that a runaway vehicle hitting pedestrians who were crossing a

driveway that ran parallel to a store was not foreseeable); *Achtermann v. Bussard*, No. 05C-04-

198 RRC, 2007 WL 901642, at *4 (Del. Super. Ct. Mar. 22, 2007) (vehicle driving over a curb,

across a sidewalk, through the front wall of a restaurant was not foreseeable; no prior accidents

had occurred at the business); *Schatz v. 7-Eleven, Inc.*, 128 So.2d 901, 904 (Fla. Dist. Ct. App.

1961) (driver negligently driving car over curb and sidewalk was "unusual or extraordinary" and

"unforeseeable in contemplation of the law"); *Sotomayor v. Tama I, LLC*, 617 S.E.2d 606, 610

(Ga. Ct. App. 2005) (driver driving over a raised concrete curb, sidewalk, and section of grass

before striking a pedestrian into an apartment building was not foreseeable; no prior incidents of

driving into the wall of an apartment building); *Schoop's Rest. v. Hardy*, 863 N.E.2d 451, 455

(Ind. Ct. App. 2007) (no evidence that a vehicle crashing into a restaurant was foreseeable; no

---

[12]        One of the cases cited by defendant has since been overruled.  Defendant cites *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 297 P.3d 334 (N.M. Ct. App. 2012) as a "perfect example" of a case where a court refused to impose a duty on a business owner to protect patrons from vehicles that depart from the confines of designed parking areas.  On May 8, 2014, after the parties had submitted the summary judgment briefing in this case, the Supreme Court of New Mexico reversed the appellate court's decision finding that it improperly considered foreseeability when determining the existence of a duty.  *Rodriquez v. Del Sol Shopping Ctr. Assocs., L.P.*, Nos. 33,896 & 33,949, __ P.3d __, 2014 WL 1831148, *1 (N.M. May 8, 2014).  The court held that the consideration of foreseeability as part of the duty of care is inconsistent with the approach of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7.  *Id.* at *5.

The Court does not apply *Rodriquez* in this case because it is inconsistent with the governing law of Kansas as described above.  In Kansas, "[t]he duty of care is intertwined with the foreseeability of harm."  *Shirley v. Glass*, 308 P.3d 1, 9 (Kan. 2013) (citation omitted).  Further, unlike New Mexico, Kansas has not specifically adopted the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7.

evidence of "prior similar incidents"); *Mayeur v. Time Saver, Inc.*, 484 So.2d 192, 195 (La. Ct. App. 1986) (not foreseeable that a driver will "negligently drive her car from the parking lot, over the curb, across the walkway and into a patron about to enter the store"); *Carpenter v. Stop-N-Go Mkts. of Ga., Inc.*, 512 So.2d 708, 709 (Miss. 1987) (convenience store had no duty to erect barriers to prevent auto from coming through store window although there had been one prior accident); *Mack v. McGrath*, 150 N.W.2d 681, 685–86  (Minn. 1967) ("The fact that over a period of five years two automobiles had gone over curbs and struck buildings did not, in our opinion, impose on the landowner a duty to anticipate and prevent the possibility of injury from other runaway vehicles."); *Grandy v. Bavaro*, 134 A.D.2d 957, 957 (N.Y. App. Div. 1987) (landowner had no duty "to guard against the unforeseeable risk that a car driven by an inexperienced driver will jump the curb and strike a pedestrian"); *Skubovious v. Clough*, 670 N.E.2d 578, 580, 581–82 (Ohio Ct. App. 1996) (not foreseeable that a vehicle would have been driven over a curb, across a sidewalk, and into a building; there were no "such prior accidents" at the business which would have led it "to foresee the occurrence and guard against the possibility"); *Cromer v. Hutto*, 280 S.E.2d 202, 203 (S.C. 1981) (not foreseeable that plaintiff would be injured while standing below a retaining wall when a car jumped over a curb, went through a shrubbery row, and over the retaining wall).

In addition, the Court has located additional cases where courts have refused to impose liability upon business owners for injuries sustained by patrons from errant vehicles.  *See*, *e.g.*, *Estate of Myers ex rel. Myers v. Wal-Mart Stores, Inc.*, No. 5:09-CV-549-FL, 2011 WL 1366459, at *7 (E.D.N.C. Apr. 11, 2011) (applying North Carolina law and concluding "that the North Carolina [Supreme Court] would either adopt a per se rule that business owners are not liable for accidents caused by runaway vehicles in their parking lots, or would apply long-

standing North Carolina case law to conclude that the specific injury here was unforeseeable where there had been no previous pedestrian-vehicle accidents in the Store's parking lot"); *Albert v. Hsu*, 602 So.2d 895, 896–897 (Ala. 1992) (foreseeability of harm resulting from a vehicle crashing into a restaurant was "too remote" to create duty); *Krispy Kreme Doughnut Co. v. Cornett*, 312 So.2d 771, 772, 775 (Fla. Dist. Ct. App. 1975) (no liability for injuries sustained when a vehicle drove into a shop because the parking lot met city building code); *Eckerd–Walton, Inc. v. Adams*, 190 S.E.2d 490, 492 (Ga. Ct. App. 1972) (possibility of vehicle jumping curb and striking building "so remote and improbable as not reasonably to be anticipated"); *Howe v. Stubbs*, 570 A.2d 1203, 1203–1204 (Me. 1990) (no duty to protect plaintiff from a vehicle that rolled down a hill and crashed into building, despite three prior incidents in the last twenty-five years); *Blount v. The Pantry, Inc.*, 936 So.2d 967, 968 (Miss. Ct. App. 2006) (affirming dismissal of a negligence action involving a vehicle that drove over the curb in front of a store, hitting an ice machine and pushing it into the storefront into a patron because "business owners do not have a duty to protect invitees from the type of harm that caused [the patron's] injuries"); *Hendricks v. Todora*, 722 S.W.2d 458, 462, 465 (Tex. App. 1986) (the risk of a drunk driver crashing into the wall of a restaurant was "so slight," and the accident was "so extraordinary that a reasonable person would disregard it"; no evidence of similar criminal or reckless conduct in the area).

On the other hand, plaintiff cites several cases where courts have reached the opposite conclusion and determined that the foreseeability of the vehicle incursion was a factual issue for the jury's determination. *See Yang v. Pac. Castle Colima, LP*, No. B227555, 2011 WL 6091245, at *4 (Cal. Ct. App. Dec. 8, 2011) (concluding that summary judgment was improper because there were fact issues about whether defendant satisfied its duty of care to a patron who was

injured when a car jumped the curb in front a shopping center; evidence of two previous curb-jumping incidents); *Barker v. Wah Low*, 97 Cal. Rptr. 85, 92 (Cal. Ct. App. 1971) (reversing summary judgment where a patron was killed while waiting at an outdoor service window when a vehicle lurched over a wooden barrier and crushed the patron because "[r]easonable men could believe that the possibility of a car jumping, lurching, or bolting forward because of mechanical failure, or negligence of the driver, although remote, was foreseeable"); *Thompson v. Ward Enter.*, 341 So.2d 837, 839 (Fla. Dist. Ct. App. 1977) (concluding that foreseeability was a jury question where plaintiff was injured by a vehicle while standing in front of a store without a curb); *Church's Fried Chicken, Inc. v. Lewis*, 256 S.E.2d 916, 920 (Ga. Ct. App. 1979) (holding that "whether the defendant reasonably should have anticipated the event which occurred, and taken reasonable steps to prevent its occurrence . . . should have been submitted to the jury" in a case where plaintiff was injured at an outdoor ordering window when a vehicle lurched into him and there was no wheel block before the curb); *Munford, Inc. v. Grier*, 221 S.E.2d 700, 701 (Ga. Ct. App. 1975) (holding that it was an issue for the jury to determine whether defendant was negligent in the maintenance of the parking lot and sidewalk when a car jumped a six and one-half inch high sidewalk and struck plaintiff and there had been one prior incident); *Chatmon v. Church's Fried Chicken, Inc.*, 211 S.E.2d 2, 2–3 (Ga. Ct. App. 1974) (holding there were enough factual issues that the jury should determine whether defendant was negligent when plaintiff was injured at an outdoor service window by a vehicle that jumped a three to four inch curb with no guard stops); *Marshall v. Burger King*, 856 N.E.2d 1048, 1060–61 (Ill. 2006) (refusing to find defendant had no duty to protect plaintiff from an errant vehicle that crashed into a restaurant; rather, the issue was whether defendant breached its duty of reasonable care and that question could not be answered on a motion to dismiss); *Ray v. Cock Robin, Inc.*, 293 N.E.2d 483, 489

(Ill. App. Ct. 1973) (a jury could conclude that defendant could "reasonably foresee or anticipate that an out-of-control vehicle could enter into the picnic area" where there was no barrier and there had been a prior incident); *Martin v. Watson's Grocery*, 615 So.2d 999, 1001 (La. Ct. App. 1993) (finding that it was foreseeable to the store owner that his patrons might be at risk of being struck by a vehicle when exiting the store); *Dalmo Sales of Wheaton, Inc. v. Steinberg*, 407 A.2d 339, 343, 348 (Md. Ct. Spec. App. 1979) (holding that issues of proximate cause and foreseeability were jury issues where plaintiff was injured by an errant vehicle and two prior incidents had occurred in the area); *Zippy Prop., Inc. v. Boyd*, 667 S.W.2d 312, 314–15 (Tex. App. 1984) (affirming jury verdict in favor of plaintiff who was injured when a vehicle crashed into a convenience store and there was evidence of "a great number of occasions vehicles had run into defendants' stores and into convenience stores generally"); *McAllen Kentucky Fried Chicken No. 1, Inc. v. Leal*, 627 S.W.2d 480, 482 (Tex. App. 1981) (affirming jury verdict in favor of plaintiff because the court "cannot say as a matter of law that [defendant] could not reasonably anticipate that an automobile might run into the building causing the damages and injuries complained about.").

The Court is mindful also of additional cases that have concluded that issues of foreseeability in vehicle incursion accidents are questions for the jury, not the Court.  *See*, *e.g.*, *Springtree Props., Inc. v. Hammond*, 692 So.2d 164, 167 (Fla. 1997) (reversing summary judgment against plaintiff who was injured when a vehicle jumped a curb in front of a fast-food restaurant and struck the plaintiff as he was exiting the building because whether the accident was foreseeable was a fact issue); *Grissett v. Circle K Corp.*, 593 So.2d 291, 293 (Fla. Dist. Ct. App. 1992) (reversing summary judgment against plaintiff who was injured when a vehicle rolled up on a sidewalk and struck plaintiff while he was using a public telephone because

foreseeability was a question for the jury); *Parish v. Daigen Oil*, 742 So.2d 18, 19, 25 (La. Ct. App. 1999) (reversing summary judgment against plaintiff who was injured as she exited a convenience store restroom and was struck by an unlicensed motorist who mistakenly pressed the accelerator instead of the brake because whether the business owner should have known of the risk to plaintiff and should have done more to protect plaintiff were issues for the jury); *Denisewich v. Pappas*, 198 A.2d 144, 148 (R.I. 1964) (whether defendant could have "reasonably anticipated that a business invitee's automobile operated at a reasonable speed in the nighttime in an unlighted parking area might by reason of the absence of an adequate barrier be driven against the outer unsubstantial wall of the restaurant with resulting injury to plaintiff" was a question "properly determinable at trial").

The California Court of Appeals cited many of these cases and provided a helpful analysis of their conflicting results in *Jefferson v. Qwik Korner Market, Inc.*, 34 Cal. Rptr. 2d 171, 173–74 (Cal. Ct. App. 1994). The *Jefferson* court recognized that the "majority [of courts considering cases involving vehicle incursion accidents] have concluded there is no liability because such accidents are insufficiently likely as a matter of law." *Id.* at 173. The "minority" of courts in curb-jumping cases have held that liability is a question of fact for the jury. *Id.* *Jefferson* noted that these cases fall into one of three categories.[13] The first category are "cases

---

[13]     The court was unable to place one case in a category and referred to it as an "anomaly." *Jefferson*, 34 Cal. Rptr. at 174. In *McAllen Kentucky Fried Chicken No. 1*, the plaintiff was injured when a car's brakes failed, causing it to jump a six-inch curb, cross a sidewalk, and crash into a store wall. *Id.* (citing *McAllen Kentucky Fried Chicken No. 1*, 627 S.W.2d at 483–84). There were no prior incidents, but the *McAllen* court concluded the accident was of such a "general character" that a reasonably careful person might have anticipated it. *Id.* (citing *McAllen Kentucky Fried Chicken No. 1*, 627 S.W.2d at 482). The *Jefferson* court referred to this as "cursory treatment" of the foreseeability issue and found the decision unpersuasive. *Id.* Other than *McAllen*, the *Jefferson* court was aware of no case that imposed liability where "the business provided both a curb and wheelstops, the parking lot design is typical of most

where the business provided no protection whatever from encroaching vehicles." *Id.* (citing *Martin*, 615 So.2d at 1001; *Dalmo Sales of Wheaton, Inc.*, 407 A.2d at 341, 343; *Zippy Properties, Inc.*, 667 S.W.2d at 313, 315; *Thompson*, 341 So.2d at 838–839; *Ray*, 310 N.E.2d at 12; *Denisewich*, 198 A.2d at 147–148). The second category consists of cases where "defendants had knowledge of prior similar incidents, and therefore the accidents were deemed foreseeable even when there was some type of barrier." *Id.* at 174 (citing *Grissett*, 593 So.2d at 292–293; *Cohen v. Schrider*, 533 So.2d 859, 860 (Fla. Dist. Ct. App. 1988); *Munford, Inc.*, 221 S.E.2d at 701). The third category includes "cases where the building design required customers to await service by standing adjacent to a parking lot or driveway." *Id.* (citing *Chatmon*, 211 S.E.2d at 3; *Barker*, 97 Cal. Rptr. 85; *Johnson v. Hatoum*, 239 So.2d 22, 27 (Fla. Dist. Ct. App. 1970)).

The question that this case presents, however, does not call the Court to apply the so-called "majority rule." Instead, our Court's assignment in a diversity case like this one is to identify the rule adopted by the Kansas Supreme Court and apply it. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014) (citation omitted). Here, that assignment is a complicated one because the Kansas Supreme Court has not addressed the issue (nor has the Kansas Court of Appeals). Given this paucity of guidance, the Court must predict what the Kansas Supreme Court would do if it were presented with this question. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).

The Court predicts that the Kansas Supreme Court, on these summary judgment facts, would hold that foreseeability is a question of fact for the jury. This prediction conforms with Kansas law requiring courts to determine foreseeability by looking at the "totality of the

---

businesses and meets all city standards and regulations, there were no prior similar incidents and nothing required customers to remain in a fixed location adjacent to the parking area." *Id.*

circumstances." *Seibert*, 856 P.2d at 1339.  This "totality of the circumstances" standard suggests the Kansas Supreme Court would reject a per se rule against liability and instead look to the specific facts of the case to determine if the harm was foreseeable.

The Court predicts likewise that the Kansas Supreme Court would decline to adopt a per se rule that business owners are not liable for accidents caused by runaway vehicles in their parking lots.  The Court also predicts that the Kansas Supreme Court would reject the conclusions reached by a few courts in other jurisdictions that such accidents are not foreseeable as a matter of law, even when there is evidence of prior accidents. *See Carpenter*, 512 So.2d at 709 (no liability although business had one prior accident); *see also Mack*, 150 N.W.2d at 685–86 (no liability despite two vehicle incursions in a five year period).

Therefore, in this case, the Court concludes that the Kansas Supreme Court would apply the holdings from the second category of cases described by the California Court of Appeals in *Jefferson*.  In those cases, the business owner had installed a curb or some other barrier, but was aware of prior incidents that had occurred on the property.  These prior incidents gave rise to factual issues that the jury must consider in determining whether the business owner should have reasonably anticipated or foreseen the harm.  Those facts are most like the facts at issue in this case.

Here, it is undisputed that defendant knew about more than 100 vehicle incursions that had occurred at its stores across the country, including one that occurred in 2009 at the store in issue in Gardner, Kansas.  While only two of these other vehicle incursions caused personal injuries, defendant actually knew that vehicle incursions occur and that personal injury may result from those incursions.  Moreover, defendant has installed bollards in its newly constructed stores for the past 15 years, and defendant concedes that safety is one of the reasons it installs

51

them.  Based on these facts, this case falls squarely within the second category of cases described by the California Court of Appeals in *Jefferson*.  Following the holdings in that second category of cases, the Court finds that the 2009 incident at the convenience store in issue in this case and the "100 plus" vehicle incursions at defendant's other stores give rise to factual issues that the jury must consider and decide to determine whether defendant reasonably should have anticipated or foreseen the harm occurring in this case.

The Court predicts that the Kansas Supreme Court would reach the same conclusion (that the factual issues are for a jury's determination and preclude summary judgment in this case) when applying the "totality of the circumstances" test used under Kansas law.  *Seibert*, 856 P.2d at 1339.  Under the "totality of the circumstances" test, "[t]he circumstances to be considered must . . . have a direct relationship to the harm incurred in regard to foreseeability."  *Id.*  The "most significant factor" to consider in the totality of the circumstances analysis is "prior incidents."  *Id.*; *see also Nero*, 861 P.2d at 780 (explaining that prior similar acts involving invitees give a landowner actual or constructive notice of the foreseeability of criminal acts).

The Kansas Supreme Court has affirmed jury verdicts in favor of plaintiffs who were injured on the premises of a business and where there was evidence of prior incidents that allowed the jury to conclude that the business owner reasonably could foresee the injuries.  *See Gould v. Taco Bell*, 722 P.2d 511, 569 (Kan. 1986) (holding that there was evidence sufficient for a jury to conclude defendant should have anticipated that plaintiff would be injured in a fight when the attacker had been involved in a similar altercation approximately two weeks before and defendant "had considered hiring security personnel because of a history of rowdyism on the premises"); *see also Kimple v. Foster*, 469 P.2d 281, 285 (Kan. 1970) (holding that a jury could conclude that defendant had knowledge of facts that should have placed him on notice that a

group of patrons may injure other guests in a nightclub because the group had been drinking heavily, were loud and boisterous, and had started a prior fight).  The Kansas cases that have considered prior incidents when determining the foreseeability of harm to business invitees all have involved prior episodes of criminal conduct.  *See, e.g.*, *South ex rel. South v. McCarter*, 119 P.3d 1, 15 (Kan. 2005) (holding that plaintiff's injuries were not foreseeable where a mobile home park did not have any specific information about an attacker's past conduct and the actual risk involved with having him on the property); *Gragg v. Wichita State Univ.*, 934 P.2d 121, 135 (Kan. 1997) (deciding as a matter of law that it was not foreseeable under the totality of the circumstances that a third party would shoot a patron at a fireworks show held at a university stadium; although there had been another shooting at a different festival held on another part of campus two years earlier, there had been no similar attacks or incidents at any of the fireworks shows held in the previous 17 years); *Weroha v. Craft*, 951 P.2d 1308, 1314 (Kan. Ct. App. 1998) (plaintiff failed to present evidence under the totality of the circumstances that would have made it foreseeable to an arcade owner that plaintiff would sustain injuries in an attack by unknown assailants; there was no evidence of previous violent activity at the business, in the area, in the arcade business, or with the alleged assailants).

While there is no evidence of any prior criminal conduct at the convenience store in Gardner, Kansas, similar to the criminal conduct on the day of the accident,[14] there is evidence of prior similar conduct in the form of a driver mistaking the brake for the accelerator and driving over the curb, onto the sidewalk, and into the storefront.  There is also evidence of similar

---

[14]     That is, there is no evidence of prior criminal conduct similar to C.M. driving illegally to the store without a valid driver's license in violation of K.S.A. § 8-235 or Hartman encouraging a child under 18 years of age to commit a traffic infraction in violation of K.S.A. §§ 21-5603(a)(2) and 21-6602(a)(1).

conduct in the form of accidental vehicle incursions at "100 plus" of defendant's stores around the country.

As the Restatement (Second) of Torts § 344 explains, a business owner may be liable for injuries sustained by its patrons on its property if the business owner "know[s] or [has] reason to know, from past experience, that there is a likelihood of *conduct* on the part of third persons *in general* which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual." Restatement (Second) of Torts § 344 cmt. f (1965) (emphasis added).[15] Although defendant was not aware of the likelihood that C.M., as an unlicensed and inexperienced driver, would drive into its parking lot, the Restatement does not require that the business owner have a "reason to expect [the conduct] on the part of any particular individual." Rather, the business owner must know from past experience that there is a likelihood of "conduct" by third persons "in general" which is likely to endanger the safety of its patrons. There is nothing in the Restatement restricting this "conduct" to just "criminal conduct." Therefore, the Court looks to whether there is evidence of any similar conduct, generally.

Based on the uncontroverted facts, a reasonable jury could conclude that defendant knew or should have known "in general" of a likelihood of third persons engaging in conduct that would cause a vehicle to jump the curb, enter the pedestrian walkway, and strike a business patron. It is undisputed that defendant knew about more than 100 incidents of other vehicle incursion accidents at its convenience stores around the country. Likewise, it is undisputed that defendant knew about a vehicle incursion incident occurring at the same Gardner store in 2009

---

[15]    The Kansas Supreme Court has adopted this comment. *See South ex. rel. South v. McCarter*, 119 P.3d 1, 12 (Kan. 2005) (citing the Restatement (Second) of Torts § 344 cmt. f.). Thus, the Court predicts that the Kansas Supreme Court would apply Restatement (Second) of Torts § 344 cmt. f to the facts of this case.

as the result of a driver mistaking the accelerator for the brake[16] and that defendant has installed bollards for the past 15 years at all of its newly constructed stores for several reasons, including safety.

Moreover, a reasonable jury could conclude that plaintiff's injuries were foreseeable based on the frequency of vehicle incursions.  Plaintiff's expert, Robert Reiter, opines that 40 to 50 vehicle incursion accidents occur in the United States on a daily basis and that 20 vehicle incursion accidents occur every day at the 160,000 convenience stores located across this county. Defendant uses these numbers, applies some additional assumptions (which, arguably, are not ones made in the light most favorable to plaintiff), and suggests that the chances of a customer committing a vehicle incursion at a convenience store is less than one in a million customers and the chances of a vehicle incursion occurring a convenience store is only one in ten thousand stores.  Defendant also contends (using Reiter's estimate that less than 10% of all vehicle incursions cause personal injury to patrons inside and outside the store) that the chances of a vehicle incursion resulting in personal injury is less than one in one hundred thousand per store and less than one in ten million per customer.  The Court concludes that these arguments are suited for a jury's evaluation and not ones that decide the question as a matter of law.  In addition, Reiter opines that there is a high potential for vehicle incursions with head-in parking

---

[16]     The Court is not persuaded by defendant's argument that the 2009 accident was different than the 2011 accident at issue in this case, and therefore defendant could not have foreseen the accident in 2011.  Defendant tries to distinguish the 2009 accident by arguing that the driver was 47 years old and had a valid driver's license, unlike C.M. who was 14 years old and unlicensed. The 2009 accident also did not result in any personal injuries to pedestrians because, fortunately, the vehicle did not strike anyone in the pedestrian walkway in front of the store in contrast to what occurred to plaintiff in this case.  But these differences are negligible when compared to the similarities of the accidents.  In both instances, the driver mistook the brake for the accelerator, drove the vehicle over the curb and onto the sidewalk, and struck the convenience store.  The Court does not agree that the fortunate outcome of the 2009 accident renders plaintiff's injuries in the 2011 accident unforeseeable as a matter of law.  Rather, these similarities and differences in the two accidents are factual issues for the jury to consider.

spaces in front of convenience stores because conveniences stores, by their nature, are speed oriented and the turnover in parking is frequent.  From these undisputed facts, a reasonable jury could find that plaintiff's injuries were foreseeable.

The Court is not persuaded by defendant's reliance on *Wayman v. Accor N. Am., Inc.*, 251 P.3d 640 (Kan. Ct. App. 2011).  In that case, plaintiff, a motel guest, was struck and injured by a vehicle driven by the motel manager who was intoxicated.  *Id.* at 642.  The Kansas Court of Appeals held that defendant was entitled to summary judgment on plaintiff's negligence claims because there was no evidence to indicate that the manager's intoxicated driving was foreseeable.  *Id.* at 651.  There was also no evidence that defendant knew the manager had a propensity to become intoxicated, or that he had an alleged propensity to drink and drive in an unsafe manner.  *Id.* at 650.  Therefore, the court affirmed summary judgment in favor of defendant.  *Id.* at 651.  Defendant argues that *Wayman* is factually analogous because the defendant in that case could not have foreseen the manager's drinking and driving just like defendant here could not have foreseen that C.M. would drive illegally to its convenience store or that Hartman would allow C.M. to drive illegally.  For the same reasons explained above, the Court rejects defendant's framing of the issue because it does not comport with Kansas law. Kansas law does not direct the Court to consider whether defendant could have foreseen the criminal actions of C.M. or Hartman; instead, Kansas law directs the Court to consider whether defendant could have anticipated the general conduct at issue here, *i.e.* negligently driving over the curb, onto the sidewalk, and into the building.  Because there is evidence of a prior accident at the subject store and "100 plus" accidents at defendant's other convenience stores, the Court determines that a reasonable jury could conclude that plaintiff's injuries here were foreseeable.

In this case, defendant has a duty of reasonable care to protect its patrons from reasonably foreseeable negligent acts.  Viewing the evidence in the light most favorable to plaintiff, as the Court must on a motion for summary judgment, the Court concludes that a reasonable jury could find under the totality of circumstances that the harm to plaintiff was foreseeable to defendant. *See Nero*, 861 P.2d at 779 (whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact; it is only when reasonable persons could arrive at only one conclusion that the court may determine the question as a matter of law).  Therefore, the Court must permit the trier of fact to resolve the question.

Finally, the Court is mindful that Kansas law cautions that "summary judgments are to be granted with caution in negligence actions."  *Smith v. Kansas Gas Serv. Co.*, 169 P.3d 1052, 1057 (Kan. 2007) (citing *Fettke v. City of Wichita*, 957 P.2d 409 (Kan. 1998)); *see also Esquivel v. Watters*, 183 P.3d 847, 850 (Kan. 2008) ("summary judgment is seldom proper in negligence cases") (quotation omitted).  Because there are genuine issues of material fact about the foreseeability of plaintiff's injuries, the Court concludes that it may not grant summary judgment.

### 3.  Superseding and Intervening Cause

Defendant also argues that it is entitled to summary judgment because its actions, even if negligent, were not the proximate cause of plaintiff's injuries.  Rather, defendant contends that the criminal actions of Hartman and C.M. and/or the negligent actions of Conner, Hartman, C.M., and C.M.'s mother were the superseding and intervening cause of plaintiff's injuries.

As explained above, the elements of a negligence claim under Kansas law are: (1) the existence of a duty, (2) breach of that duty, (3) injury, and (4) a causal connection between the duty breached and the injury suffered.  *Smith v. Kansas Gas Serv. Co.*, 169 P.3d 1052, 1057

(Kan. 2007) (quotations omitted).  To establish causation under the fourth element, a plaintiff must show that the breach of duty was "the actual and proximate cause of the injury."  *Davey v. Hedden*, 920 P.2d 420, 429 (Kan. 1996) (citing *Baker v. City of Garden City*, 731 P.2d 278 (Kan. 1987)).  "The proximate cause of an injury is the cause that in a natural and continuous sequence, unbroken by any superceding cause, both produced the injury and was necessary for the injury." *Hale v. Brown*, 197 P.3d 438, 440 (Kan. 2008).  "The injury must be the natural and probable consequence of the wrongful act."  *Id.* (citing *Yount v. Deibert*, 147 P.3d 1065 (Kan. 2006)).  "Individuals are not responsible for all possible consequences of their negligence, but only those consequences that are probable according to ordinary and usual experience."  *Id.* (citing *Aguirre v. Adams*, 809 P.2d 8 (1991)).

The Kansas Supreme Court has explained that there are two categories of causation: causation in fact and legal causation.  *Puckett v. Mt. Carmel Reg. Med. Ctr.*, 228 P.3d 1048, 1060 (Kan. 2010) (citations omitted).  "To prove causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred."  *Id.* (citations omitted).  "To prove legal causation, the plaintiff must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable."  *Id.* (citation omitted).  Whether the actions of a third person were an "intervening cause" are part of the legal causation analysis and do not "'come into play until after causation in fact has been established.'"  *Id.* (quoting *Waste Mgmt. v. S. Cent. Bell*, 15 S.W.3d 425, 432 (Tenn. Ct. App. 1997)) (further citations omitted).

"An intervening cause is 'one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.'" *Id.* (quoting Restatement (Second) of Torts § 441 (1964)).  A defendant may avoid liability only if an intervening cause supersedes the defendant's negligence.  *Id.*  As the Kansas Supreme Court has explained, "the superseding and intervening cause 'component breaks the connection between the initial negligent act and the harm caused.'" *Id.* (quoting *Hale*, 197 P.3d 438).  In *George v. Breising*, 477 P.2d 983, 988 (Kan. 1970), the Kansas Supreme Court described intervening causation in this fashion:

> Whether the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the intervening negligent act of another is determined by the test of foreseeability.  If the original actor should have reasonably foreseen and anticipated the intervening act causing injury in the light of the attendant circumstances, his act of negligence would be a proximate cause of the injury.  Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought.  When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct and proximate cause and the former only the indirect or remote cause.

Defendant argues that there is no evidence showing that it had knowledge of any predisposition of Conner, Hartman, C.M., or C.M.'s mother to act negligently or criminally in allowing C.M. to operate the Mercedes without a valid driver's license.  Defendant also relies on statements made by plaintiff's experts in their depositions where they conceded that plaintiff would not have been injured if C.M., an unlicensed, untrained, and inexperienced driver, had not been operating the vehicle on the day of the accident.  Therefore, defendant argues that these unforeseeable actions committed by third parties were the superseding and intervening cause of plaintiff's injuries which absolve defendant of any liability in this case.

Defendant's argument is similar to one rejected by the Kansas Supreme Court in *George v. Breising*, 477 P.2d 983, 988 (Kan. 1970).  In that case, the defendant operated an automobile

garage and left the keys in the ignition of a vehicle that was being serviced at the business.  *Id.* at 984–85.  A third party stole the vehicle, and while he was driving it around town, he struck and injured the plaintiff.  *Id.* at 985.  The defendant argued that even if he was negligent in leaving the keys in the ignition, his actions were not the proximate cause of the plaintiff's injuries.  Determining the causation issue, the court explained, "the issue is not whether it was foreseeable that [the] vehicle would be stolen as [defendant] urges in his brief; rather, the inquiry is whether the independent intervening act of negligence committed by [the third party thief] in driving the stolen vehicle was reasonably foreseeable."  *Id.* at 988.  Likewise, in this case, the issue is not whether it was foreseeable that C.M. or Hartman would commit criminal actions or that Conner, Hartman, C.M., or C.M.'s mother would act recklessly and allow C.M. to drive the vehicle.  Rather, the issue is whether the independent intervening act of C.M. negligently driving the vehicle over the curb, onto the sidewalk, and into the building was foreseeable to defendant.  For the same reasons discussed above, the Court finds that a reasonable jury could reach differing conclusions about whether it was foreseeable to defendant that one of its patrons would negligently drive a vehicle over the curb, onto the sidewalk, and into plaintiff causing her injury.  Therefore, this factual issue must be determined by the jury, and the Court may not properly decide it on summary judgment.

Defendant suggests that the facts of *Davey v. Hedden*, 920 P.2d 420 (Kan. 1996) are "bizarrely analogous" to this case and require the Court to find that the actions of Conner, Hartman, C.M. and/or C.M.'s mother were the proximate causes of plaintiff's injuries.  In *Davey*, two parents left home on a vacation and allowed their two teenage sons, who had restricted licenses, to drive a Mercedes to school and school related activities.  *Id.* at 423.  One of the sons gave permission to Jason Davey to drive the Mercedes.  *Id.*  Davey and a passenger, Catherine

Farnsworth, were under the age of 16 and possessed restricted drivers' licenses.  *Id.*  After driving off in the Mercedes, Davey pulled over and let Farnsworth drive the vehicle.  *Id.* Farnsworth drove down an unfamiliar road, lost control of the vehicle, and hit a tree.  *Id.*  Davey went through the windshield and suffered serious injuries.  *Id.*  Defending a negligence claim brought by Davey, the parents argued that their actions were not the proximate cause of plaintiff's injuries.  The Kansas Supreme Court noted that the record did not contain any evidence that the parents knew of any propensity on the part of their sons to allow third parties to drive the family's vehicles.  *Id.* at 430.  Therefore, the Court held there was no evidence to support an inference of foreseeability of the accident and injury that occurred.  *Id.*  Absent such evidence, the negligence of Davey and Farnsworth "constitute[d] 100% of the intervening cause and it [was] an independent intervening cause."  *Id.* (quotation omitted).

Conversely, in this case, there is evidence to support an inference that defendant could have foreseen the injuries to plaintiff as a pedestrian standing on the sidewalk outside of its convenience store.  Defendant was aware of "100 plus" vehicle incursion accidents that had occurred at its stores across the country, including one that occurred in 2009 at the convenience store in Gardner, Kansas, which involved a driver negligently pressing the accelerator instead of the brake, driving over the curb and onto the sidewalk, and striking the building.  As the Kansas Supreme Court explained in *Davey*, where "reasonable minds could differ" on the proximate cause of plaintiff's injuries, "summary judgment is not proper."  *Davey*, 920 P.2d at 430.  From these facts, reasonable minds could conclude that the actions of C.M., her mother, Hartman, and Conner were an intervening cause plaintiff's injuries.  On the other hand, reasonable minds could also conclude that these actions were a concurrent, proximate cause of plaintiff's injuries which

combined with defendant's actions to harm plaintiff.  Therefore, summary judgment is not proper.

The Court is also mindful that "proximate cause is ordinarily a question of fact that is reserved for the trier of fact."  *Hale*, 197 P.3d at 441 (citing *Cullip v. Domann*, 972 P.2d 776 (Kan. 1999)); *see also Schmeck v. City of Shawnee*, 651 P.2d 585, 598 (Kan. 1982) (citations omitted) ("negligence, contributory negligence and proximate cause are all issues to be determined by the jury").  Only "when all the evidence on which a party relies is undisputed and susceptible of only one inference" does "the question of proximate cause become[ ] a question of law."  *Id.* (citing *Cullip*, 972 P.2d 776).  That is not the case here.  Because there are questions of fact about the foreseeability of the harm, the trier of fact must resolve the issue of proximate cause.  Consequently, the Court denies defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Exclude or Limit the Testimony of Expert Richard D. Blomberg (Doc. 162) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Exclude Expert Testimony (Doc. 166) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Summary Judgment (Doc. 164) is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of July, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**